IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KEVIN HOLLAMON                                                                                    PLAINTIFF

v.                                      CASE NO. 4:10CV00011 BSM

FRITO-LAY, INC.                                                                                   DEFENDANT

## ORDER

Defendant Frito-Lay, Inc. ("Frito-Lay") moves for summary judgment on plaintiff Kevin Hollamon's employment discrimination claims. [Doc. Nos. 64-66]. Hollamon has filed a response in opposition, [Doc. Nos. 88-90] and Frito-Lay has replied. [Doc. Nos. 91, 92]. Also pending is Frito-Lay's motion to strike. [Doc. Nos. 93, 94]. For the reasons set forth below, Frito-Lay's motion for summary judgment is granted, and its motion to strike is denied as moot.

### I. FACTUAL BACKGROUND

Viewed in the light most favorable to Hollamon, the uncontroverted facts are as follows. Kevin Hollamon is a black man who worked for Frito-Lay from May 1994 until his termination on August 4, 2008. He was initially hired as a detailer and later became a route sales representative. In his route sales position, Hollamon was responsible for sales, merchandising, product rotation, and processing customer payments. All customer payments were to be handled in accordance with Frito-Lay's national cash policy, which is fully set forth in the employee handbook.

Under the national cash policy, Hollamon was required to turn in all customer checks,

money orders covering all cash received, and a daily report at the end of each day. The money orders and checks submitted to Frito-Lay were to be equal to the exact amount shown as "cash due" on the daily report. For example, if Hollamon made three deliveries, with the first customer paying $400 by check, the second customer paying $100 in cash, and the third customer paying $50 in cash, he was required to turn in the $400 check and a $150 money order along with his daily report showing the details of those transactions. In this sense, the "cash" policy governs more than just cash; it applies to all payments from customers who do not have a charge account.

The penalties for violating the national cash policy were clearly spelled out. The first violation of the policy involving more than $100 of customer payments results in a final written warning, so long as the balance is paid back within five days. A second violation in excess of $100 results in termination. Hollamon was aware of the policy and the sanctions he could receive for not following it.

Sometime in 2006, Frito-Lay replaced the management group in its Little Rock zone. The new regime emphasized that going forward, all employees would be expected to strictly follow company policies, even if those policies had not been enforced in the past. Among these policies was the national cash policy.

In January 2008, Hollamon's supervisors examined his sales paperwork and cash receipts after reviewing a weekly report indicating Hollamon possibly violated the national cash policy. After reviewing Hollamon's paperwork it was determined that he had indeed

violated the national cash policy in an amount greater than $100. They discovered that Hollamon received $336.70 in cash on January 16 but failed to obtain money orders until January 18. They also discovered that Hollamon failed to timely submit his January 16, 2008, daily report and charged Frito-Lay for the cost of the money orders before actually purchasing them. For these infractions, and pursuant to the well-established rules, Hollamon received and signed a final written warning on February 1, 2008, stating that "should you create another cash shortage in the course of your employment at Frito-Lay, you will proceed to the next progressive disciplinary step which is termination."

In July 2008, management discovered that Hollamon had again violated the national cash policy in an amount greater than $100. According to his July 11 daily report, Hollamon received $426.34 in cash and $1,635.19 in checks but did not obtain a money order covering the cash until July 13 and did not turn in a customer check in the amount of $533.55 until July 21. Further, Hollamon again charged Frito-Lay for the cost of the money order prior to actually purchasing it.

On July 30, 2008, Hollamon was suspended pending final review by Frito-Lay's human resources department. The company's subsequent investigation showed that Hollamon had actually violated the national cash policy on seven separate occasions since May 2008, but that he had corrected each variance before his supervisors generated the relevant weekly reports. Hollamon was therefore fired on August 4, 2008, and did not request review of either his final written warning or his termination.

Hollamon filed this *pro se* action on January 7, 2010, and sought relief under various federal and state civil rights laws. A number of his claims were previously dismissed. [Doc. No. 36]. His remaining claims include failure-to-promote and unlawful termination claims brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"); similar claims brought pursuant to 42 U.S.C. § 1981 ("section 1981"); and Arkansas Civil Rights Act (ACRA) claims for race, sex, and age discrimination, and for hostile work environment. Frito-Lay moves for summary judgment on all claims.

## II. LEGAL STANDARD

Summary judgment is proper if, after viewing the evidence in the light most favorable to Hollamon, no genuine issues of material fact exist and Frito-Lay is entitled to judgment as a matter of law. *Nelson v. Corr. Med. Servs.*, 533 F.3d 958, 961 (8th Cir. 2008). Hollamon cannot survive the motion for summary judgment merely by pointing to disputed facts; the facts in dispute must be material to the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1985). If the facts alleged by Hollamon, when viewed in the light most favorable to his claims, would not allow a reasonable jury to find in his favor, then summary judgment should be granted in favor of Frito-Lay. *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1029 (8th Cir. 2006).

## III. DISCUSSION

Summary judgment is granted because Hollamon has not produced any evidence creating a genuine issue of fact as to any of his claims.

A.	Race and Sex Discrimination

In the absence of direct evidence showing a specific link between the alleged discriminatory animus and the challenged decisions, Hollamon must create the requisite inference of unlawful discrimination through the familiar *McDonnell Douglas* burden-shifting framework. *See Maxfield v. Cintas Corp. No. 2*, 427 F.3d 544, 550 (8th Cir. 2005) (analyzing Title VII, section 1981, and ACRA claims under *McDonnell Douglas*). Accordingly, he must first state a *prima facie* case of discrimination by proving that he (1) is a member of a protected class, (2) was meeting Frito-Lay's legitimate job expectations, (3) suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated differently. *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008).

To begin, Frito-Lay has produced evidence that Hollamon was not meeting its legitimate expectations. Not including the cash policy violations, Hollamon's disciplinary file contains 24 reprimands for extreme tardiness, unprofessional and inappropriate interactions with store employees, oppositional behavior and blatant insubordination, failure to keep inventory records, having an excessive number of "unsaleables", failure to follow call-in procedures, and failure to properly maintain store displays. Such conduct clearly indicates that Hollamon's job performance was not meeting Frito-Lay's expectations. *See Ziegler v. Beverly Enterprises-Minnesota, Inc.*, 133 F.3d 671, 675 (8th Cir. 1998). To create a genuine dispute as to this element, Hollamon must introduce some competent evidence

from which a jury could find he was in fact meeting Frito-Lay's expectations. He has simply failed to offer any such proof, and summary judgment is therefore appropriate.

B.  Failure to Promote

To state a *prima facie* case for failure to promote, Hollamon must prove that he (1) is a member of a protected group, (2) was qualified and applied for an available position, (3) was rejected for that position, and (4) employees similarly situated who are not part of the protected group were promoted instead. *Moore v. Forrest City Sch. Dist.*, 524 F.3d 879, 883 (8th Cir. 2008).

It is undisputed that Hollaman was not denied a promotion because he never sought one. The record indicates that Frito-Lay employees can advance their careers through a self-nomination process or by applying for open positions on the company's website. It is undisputed that Hollamon spoke with several Frito-Lay employees who encouraged him to take a leadership role in his route sales position, to apply for open positions, and to participate in the self-nomination process. It is also undisputed that Hollaman failed to do so.

Although Hollamon urges that he exhibited leadership qualities and that he earned a master's degree in human resource development while employed with Frito-Lay, he was required to offer some evidence showing that he actually applied for a position and was rejected. Because he did not, summary judgment is appropriate.

6

C. <u>Hostile Work Environment</u>

Hollamon's hostile work environment claim is also analyzed under the *McDonnell Douglas* burden-shifting framework. *Anderson v. Family Dollar Stores of Arkansas, Inc.*, 579 F.3d 858, 862 (8th Cir. 2009). To make out a *prima facie* case, Hollamon must prove that (1) he is a member of a protected class, (2) he was subjected to unwelcome harassment, (3) the harassment resulted from his membership in the protected class, and (4) the harassment was severe enough to affect the terms, conditions, or privileges of his employment. *Id.* Furthermore, for such harassment to be actionable, it must be both objectively and subjectively offensive. *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004). Therefore, in addition to establishing his own torment, Hollamon must show that, given the totality of the circumstances—including the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with Hollamon's work performance—a reasonable person would find Frito-Lay's workplace hostile or abusive. *Id.*

Hollamon asserts that one of his supervisors told him that he had been observing Hollamon's performance and that the "BS" Hollamon had been getting away with was going to come to an end. No matter how rude or unprofessional this supervisor's tone may have been, the statement does not come close to creating the "poisonous" environment necessary for a hostile work environment claim. *See Nitsche v. CEO of Osage Valley Elec. Co-op.*, 446

F.3d 841, 846 (8th Cir. 2006). Accordingly, summary judgment is appropriate on Hollamon's hostile work environment claim.

D.     Age Discrimination

Because the ACRA does not protect against age discrimination, *see Morrow v. City of Jacksonville*, 941 F. Supp. 816, 826 (E.D. Ark. 1996), Hollamon's age discrimination claim must also fail as a matter of law.

For all of these reasons, Frito-Lay's motion for summary judgment [Doc. No. 64] is granted, and its motion to strike [Doc. No. 93] is denied as moot. An appropriate judgment will accompany this order.

IT IS SO ORDERED this 14th day of June 2011.

_____
UNITED STATES DISTRICT JUDGE